### BRAUN v. BOARD OF COMMISSIONERS OF BENTON COUNTY.

(Circuit Court, D. Indiana. March 13, 1895.)

#### No. 8,929.

GRAVEL-ROAD BONDS—INDIANA STATUTE.

The statute of Indiana, relating to the construction of gravel roads, provides (3 Burns' Rev. St. § 6860; Rev. St. 1881, § 5096) that assessments to pay for such roads shall be levied on the property benefited; and also (3 Burns' Rev. St. § 6861; Rev. St. 1881, § 5097) that, for the purpose of raising money to meet the expenses, the commissioners of the county are "authorized to issue the bonds of the county, maturing at annual intervals, after two years * * * and said assessments shall be divided in such manner as to meet the payments of principal and interest of the bonds, * * * and, when collected, the money arising therefrom shall be applied to no other purpose but the payment of the bonds and interest. * * *" *Held* (following the construction of the statute by the courts of Indiana), that bonds issued in pursuance of this statute do not create a general obligation of the county upon which an action may be maintained for mere failure to pay them at maturity, but only an obligation payable out of the assessments, when collected, upon which the county cannot be made liable, unless it appears that the assessments have been collected and wrongfully withheld, or that the failure to collect is due to some negligent or wrongful act or omission.

This was an action by George A. Braun on certain bonds and coupons issued by the board of commissioners of Benton county, Ind.

Albert J. Beveridge, Harris & Thurston, and Rossington, Smith & Dallas, for plaintiff.

Elliott & Elliott and Walker & Gray, for defendant.

BAKER, District Judge. The complaint, in 52 paragraphs, counts upon 12 bonds of $1,000 each, and the interest coupons thereto annexed. The bonds and coupons, except in time of payment, are duplicates of each other. Copies of one bond and one coupon are as follows:

"No. 1.                                              $1,000.00

"United States of America, State of Indiana, Benton County.

"Gravel Road Six per Cent. Coupon Bond.

"Three years after date, the county of Benton, in the state of Indiana, will pay to bearer one thousand dollars, lawful money of the United States, with interest thereon at the rate of six per cent., payable semiannually at the office of the banking house of Winslow, Lanier & Co., New York City, New York. The interest to be paid on the fifth day of February and the fifth day of August of each year, on the presentation and surrender of the annexed interest coupons as they shall severally become due. This bond is one of a series of twelve bonds of even date, made for the purpose of building a free gravel road in said county, known as the H. C. Harris Free Gravel Road, pursuant to an order of the board of commissioners of said county of Benton, and state of Indiana, on the 10th day of June, 1890 (see Record 11, at page 186), and

pursuant to an act approved March 3d, 1877, in relation to free gravel roads (see Acts 1877, p. 82, and the acts amendatory thereof and supplementary thereto). In witness whereof we have hereunto set our hands and have caused the seal of said county to be attached, at the town of Fowler, in said county and state, this 5th day of August, 1890.

"William Bennett,  ) Commissioners
"James Darby.     }   of
"John W. Wilson,  ) Benton Co. Ind.

"State of Indiana, Benton County—ss.: I, James A. McKnight. county auditor, do hereby certify that the annexed bond was issued to the county treasurer this 5th day of August, 1890. In testimony whereof I have hereunto set my hand and affixed the seal of said board of county commissioners this 5th day of August, 1890.         James A. McKnight.

"Auditor Benton County, Ind."

"No. ——.                                        $30.00

"The county of Benton, in the state of Indiana, will pay to the bearer on the fifth day of February, 1892, at the office of the banking house of Winslow, Lanier & Co., in the city of New York, N. Y., thirty dollars, on presentation and surrender of this coupon, being six months' interest due at that date on bond No. 1 of the bonds issued for the purpose of building the H. C. Harris free gravel road.                   William Bennett,

"James Darby,
"John W. Wilson,
"Commissioners."

The defendant answered, alleging, in substance, that the bonds and coupons were executed for the purpose of building and paying for the construction of a free gravel road, and for no other purpose; that said bonds and coupons do not constitute a general obligation of the county, nor were they executed in payment of any debt of the county, or to secure money therefor; that they were executed and issued to pay for said road pursuant to an act of the general assembly of the state of Indiana, approved March 3, 1877, and acts amendatory thereof and supplementary thereto, and that the purchasers of said bonds and coupons and the plaintiff each had notice of the purpose for which they were issued at the time they were issued and purchased, and then knew that they constituted no obligation as against the county; that the defendant never received any consideration whatever for said bonds and coupons, but whatsoever was paid or received for them was paid to and received by the contractor who built said road; that before the bonds were negotiated and purchased, litigation arose as to the validity of the proceedings for the construction of said road, which resulted in the defendant and its officers being enjoined from collecting any assessment for the same, and said proceedings were held invalid on the ground that the petition was not signed by a sufficient number of property owners subject to assessment for the construction of said road; that the plaintiff and the purchasers of said bonds and coupons each had notice of said litigation before they purchased the same, and while said suit was still pending; that all of the proceedings in said suit are, and were at the time said bonds and coupons were purchased, of record in the proper offices and records of said county; that the only provision in relation to said bonds or coupons made by said county or its officers is found in the order of its board of commissioners of June 10, 1890, in Record 11, page 186,

referred to in said bonds, and the only provision therein upon the subject is the following, to wit, "Said work [upon said road] to be paid for in accordance with the plans and specifications as fast as gravel-road bonds may be legally issued"; that said bonds and coupons were executed solely to pay for said work upon said H. C. Harris free gravel road, and were payable solely out of the assessments therefor, and not otherwise, as the plaintiff knew when he purchased the same; that no assessments have been 'or can be collected, by reason of the injunction aforesaid, which still remains in full force and effect. Reply in denial. The defendant, on the trial, failed to prove actual notice to the plaintiff of the suit resulting in a decree enjoining the collection of the assessments. So that the plaintiff's right of recovery rests on the character of the obligation created by the bonds. If the bonds are the primary and direct obligations of the county, the plaintiff is entitled to a recovery, but, if the bonds create a secondary obligation, only binding the county to use diligence and good faith in collecting and paying over the assessments provided for in the gravel-road statute, the plaintiff cannot recover on his present complaint. The complaint contains no allegation of negligence or wrong on the part of the county authorities. It simply avers the execution and delivery of the bonds to the plaintiff, that they are past due, and remain unpaid.

It is firmly settled that the purchaser of municipal bonds is chargeable with notice of the statute under which they are issued. He is also chargeable with notice of every recital contained on the face of the bonds. In the present case each bond recites that the bond is "made for the purpose of building a free gravel road in said county, known as the H. C. Harris Free Gravel Road, pursuant to an order of the board of commissioners of said Benton county, and state of Indiana, on the 10th day of June 1890 (see Record 11, at page 186), and pursuant to an act approved March 3, 1877, in relation to free gravel roads (see acts 1877, p. 82, and the acts amendatory thereof and supplementary thereto)." The statute (Acts 1877, p. 82) under which the bonds were issued confers upon the board of commissioners the power, in the manner therein provided, to construct, improve, and maintain free turnpike or gravel roads in the county, and, after various provisions in respect to the proceedings, it, among other things, requires an assessment upon the lands benefited lying within two miles of the improvement. Section 6, after providing the manner in which the benefits shall be assessed, provides:

"The said assessment upon lands under the provisions of this act, shall be placed upon a special duplicate, to be provided by the county auditor at the expense of the county for that purpose; and such assessment shall constitute and be considered a first. lien on the real estate assessed, in the same manner as other taxes are; provided, that the cost and expense of the preliminary survey, proceedings and report of said improvement, shall be paid out of the county treasury, and be refunded, as well as all other amounts advanced by the county for the preliminary expenses of such improvements in the manner hereinafter provided." 3 Burns' Rev. St. § 6860 (Rev. St. 1881, § 5096).

The seventh section, as amended by Acts 1883, p. 35, reads as follows:

"That for the purpose of raising the money necessary to meet the expenses of said improvement the commissioners of the county are hereby authorized to issue the bonds of the county, maturing at annual intervals after two years, and not beyond eight years, bearing interest at the rate not to exceed six per cent. per annum, payable semi-annually, which bonds shall not be sold for less than their par value; and said assessment shall be divided in such manner as to meet the payment of principal and interest of said bonds, and so be placed upon the duplicate for taxation against the lands assessed, and collected in the same manner as other taxes, and when collected the money arising therefrom shall be applied to no other purpose but the payment of said bonds and interest: provided, that no bonds shall be delivered, or money paid, to any contractor except on estimate of work done, as the same progresses or is completed: provided further, that the amount of such bonds outstanding at any one time shall not exceed one and one half per centum on the value of the taxable property within such county." 3 Burns' Rev. St. § 6861 (Rev. St. 1881, § 5097).

There is nothing in any amendatory or supplemental act material to the question before the court. The construction given to a statute of a state by its highest judicial tribunal is regarded as a part of the statute, and is as binding upon the courts of the United States as the text. Leffingwell v. Warren, 2 Black, 599; Balkam v. Iron Co., 154 U. S. 177, 14 Sup. Ct. 1010; Railway Co. v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114; Bauserman v. Blunt, 147 U. S. 647, 13 Sup. Ct. 466; Interstate Commerce Commission v. Baltimore & O. R. Co., 145 U. S. 263, 284, 12 Sup. Ct. 844; Detroit v. Osborne, 135 U. S. 492, 10 Sup. Ct. 1012; Bucher v. Railroad Co. 125 U. S. 555, 8 Sup. Ct. 974; Claiborne Co. v. Brooks, 111 U. S. 400, 4 Sup. Ct. 489; Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10. If the highest judicial tribunal of a state adopts a new view as to the proper construction of a statute of the state, and reverses its former decisions, the courts of the United States will follow the latest settled adjudications. U. S. v. Morrison, 4 Pet. 124; Green v. McNeal's Lessee, 6 Pet. 291; Leffingwell v. Warren, 2 Black, 599. There is an apparent, but not a real, exception to the doctrine that the courts of the United States will follow the latest settled adjudications of the highest judicial tribunal of the state in the construction of a state statute. Where a state statute has been construed by the courts of the state, and parties have acted upon that construction, and have entered into contracts upon the faith of it, the courts of the United States will refuse to follow later adjudications, which change the former construction, whenever the rights of either of the contracting parties would be injuriously affected by so doing. Taylor v. Ypsilanti, 105 U. S. 72; Douglass v. County of Pike, 101 U. S. 677; Anderson v. Township of Santa Anna, 116 U. S. 361, 6 Sup. Ct. 413; Gelpcke v. Dubuque, 1 Wall. 194; Trust Co. v. De Bolt, 16 How. 425. This exception is apparent only, for it rests upon the principle that the construction becomes a part of the statute, and to permit it to be changed so as to impair the obligation of a contract would violate a familiar provision of the federal constitution. The courts of the United States will not inquire whether the construction of the state statute is right or wrong, for, whether it be the one or the other, it is equally conclusive upon them. The construction put upon the statute by the courts of the state becomes a

part of it, and can no more be disregarded by the courts of the United States than it could be if it had been originally incorporated into the text of the statute.

Therefore the sole question left for consideration is what construction, if any, has been placed upon the statute by the decisions of the highest judicial tribunals of the state. A review of these decisions, in my judgment, clearly establishes the doctrine that gravel-road bonds, of the character here under consideration, do not create a general obligation of the county, upon which an action may be maintained for mere failure to pay them at maturity, but only an obligation payable out of the assessment of benefits when collected; and that the county cannot be made liable to an action upon them, unless it appears that the assessments have been collected and wrongfully withheld, or that the failure to collect the assessments is caused by some negligent or wrongful act or omission of the board of commissioners. The case of Gavin v. Commissioners, 104 Ind. 201, 3 N. E. 846, was a suit by a landowner to enjoin the collection of an additional tax to aid in the construction of a free gravel road. Taxes amounting to $476.50 had been assessed upon the plaintiff's land for that purpose, which were made payable in six annual installments, by an order of the board of commissioners entered on September 9, 1882. On June 9, 1884, after the completion of the road, without any notice to the plaintiff, an additional tax, amounting to $38.12, was assessed upon his land, to aid in the construction of said free gravel road. It was held that the tax so assessed was illegal and void for want of notice. The court say:

"The statute is careful to protect the county interests, and to guard against the use of the general funds of the county to pay any part of the expenses incident to the construction of a free gravel road."

The case of Strieb v. Cox, 111 Ind. 299, 12 N. E. 481, was a suit by Strieb against the treasurer, auditor, and board of commissioners of Grant county to enjoin the collection of a tax assessed upon his land for the payment of bonds which had been issued to aid in the construction of a free gravel road. The bonds, amounting to $43,000, were alleged to be void, because they created a debt against the county in excess of 2 per cent. of the assessed value of the taxable property within such county. The creation of an indebtedness by a county in excess of that amount is prohibited by an amendment to the constitution of this state adopted March 14, 1881, which declares:

"No political or municipal corporation in this state shall ever become indebted, in any manner or for any purpose, to an amount, in the aggregate, exceeding two per centum of the value of the taxable property within such corporation, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness; and all bonds or obligations in excess of such amount, given by such corporation, shall be void: provided, that in time of war, foreign invasion, or other great public calamity, on petition of a majority of the property owners, in number and value, within the limits of such corporation, the public authorities, in their discretion, may incur obligations necessary for the public protection and defense to such an amount as may be requested in such petition." Const. art. 13, § 1 (Burns' Rev. St. § 220; Rev. St. 1881, § 220).

A judgment could not, by any possibility, have been pronounced without authoritatively determining whether the bonds issued under the act of 1877 were or were not the general obligations of the county. This was the pivotal question, and its decision determined the controversy. It was decided that the bonds did not constitute a debt of the county. The court quoted section 7 of the act of 1877, as amended by the acts of 1883, and placed its judgment upon the sole ground that bonds issued under that statute were not the bonds of the county, and created no indebtedness against the county in its political or municipal character. If the bonds had been held to be an indebtedness of the county, a conclusion exactly the reverse of that adjudged must have been reached. The court thus expressed its judgment:

"We are of opinion that the bonds issued by the board of commissioners of Grant county under the provisions of the section quoted, and pursuant to the authority thereby conferred, did not and do not constitute an indebtedness of such county, and did not and do not evidence an indebtedness incurred by said county, within the inhibition of article 13 of our state constitution. Such bonds are not payable by the county, or out of the general funds of the county treasury. They are payable out of the particular fund to be raised by the collection of the assessments made on the lands adjacent to such free gravel road, 'divided in such manner as to meet the payment of principal and interest of said bonds,' and placed as directed on the tax duplicates against the lands assessed, 'and collected in the same manner as other taxes,' which fund, when so collected, 'shall be applied to no other purpose than the payment of said bonds and interest.' No other provision is made by law for the payment of either the bonds or the interest thereon; and the bonds and interest are made payable out of the particular fund to be derived from the collection of the assessments made on the lands adjacent to such free gravel road, and from no other source, and such fund is pledged by the statute for the payment of said bonds and interest. It is manifest, we think, from all the provisions of the above-entitled act of March 3, 1877, and the amendments thereof, that the legislature intended that the entire cost and expense of constructing any free gravel, macadamized, or paved road, and all bonds of the county issued for the purpose of raising the money necessary to meet the expense of such improvement, should be borne and paid out of the particular fund to be raised by and from the collection of the assessments made on the lands adjacent to such road. While it is provided that the preliminary expenses of such an improvement may be paid out of the county treasury, yet it is further provided that the amount so paid must be refunded out of the particular fund to be raised as aforesaid from the assessments on adjacent lands."

The case of Commissioners v. Fullen, 111 Ind. 410, 12 N. E. 298, was a suit to enjoin the collection of an additional assessment to aid in the construction of a free gravel road. It was there held that the legislature intended to make the lands benefited by the improvement bear the whole expense, and that the board of commissioners had authority to levy an additional assessment, not exceeding the special benefits conferred upon the land. The court, speaking of the proper construction of the statute, say:

"It is important to keep constantly in mind that the law requires that the entire cost shall be collected from the property owners, for it was not intended that in any event, or upon any possible contingency, should the cost be paid out of the county treasury. As the clear intention of the legislature was that the whole expense of the improvement should be paid by the property benefited, it must follow that the power to carry into effect the intention of the legislature is a continuing one, and that it is not exhausted by its exercise in the first instance."

It is further said:

"The construction of a free turnpike or gravel road is not, in a strict legal sense, a county matter, for the commissioners do not levy assessments by virtue of their position as the official representatives of the county, but by virtue of an express statute specially conferring that power upon them. * * * If they are not agents of the county, then loss ought not, in any event, to fall upon the county."

See Burton v. State, 111 Ind. 600, 12 N. E. 486, which reaffirms the ruling in Strieb v. Cox, supra.

The case of Commissioners v. Fahlor, 114 Ind. 176, 15 N. E. 830, was a suit to enjoin the collection of an additional assessment, made to aid in the construction of a free gravel road. It was held that an additional assessment, made after the original assessment had been placed upon the tax duplicate, without notice to the landowner or reference to viewers, was void, and its enforcement would be enjoined. Speaking of the construction placed upon the statute in Board v. Fullen, 111 Ind. 410, 12 N. E. 298, the court say:

"The conclusion is there maintained beyond question, that the statute imperatively requires the entire expense incident to the construction of such roads to be borne by the adjoining landowners."

The case of Commissioners v. Hill, 115 Ind. 316, 16 N. E. 156, was an action upon the bond of the contractor who had taken the contract for the construction of a free gravel road. Referring to the act of March 3, 1877, and the act of April 8, 1885, the court there said:

"These two laws also concur in providing clearly and unequivocally that the corporate county shall not be subjected to nor incur any debt, liability, or damages by reason or on account of the construction of any such road, or by reason of any act done, or for the failure or omission to act by the county board, or by the engineer or superintendent in charge of the construction of such road. This conclusion follows of necessity from, and is supported by, several recent decisions of this court in cases involving the construction of the aforesaid laws for the construction of free gravel roads, and the liability of the corporate county for debts or damages growing out of, or resulting from, acts of commission or omission by the county board, or by the engineer or superintendent in the construction of such roads. Strieb v. Cox, 111 Ind. 299, 12 N. E. 481; Commissioners v. Fullen, 111 Ind. 410, 12 N. E. 298; Burton v. State, 111 Ind. 600, 12 N. E. 486; Abbett v. Commissioners, 114 Ind. 61, 16 N. E. 127."

The case of Commissioners v. Fullen, 118 Ind. 158, 20 N. E. 771, is the same case which was before the court in 111 Ind. 410, 12 N. E. 298. The court there say:

"The debt created for this purpose [i. e. the construction of a free gravel road] is primarily the debt of the landowners, and is chargeable upon a specific fund, and not upon the county."

See Quill v. City of Indianapolis, 124 Ind. 292, 23 N. E. 788, where the same doctrine is reasserted.

In Spidell v. Johnson, 128 Ind. 235, 25 N. E. 889, it is held that the county is not liable for bonds issued to aid the construction of a free gravel road. The court, citing the case of Strieb v. Cox, 111 Ind. 299, 12 N. E. 481, say:

"Bonds such as those in question are not the obligations of the county. The lien fixed by statute upon the lands benefited constitutes a security for the benefit of the bondholders."

In the case of Little v. Commissioners, 7 Ind. App. 118, 34 N. E. 499, it is held that the act of 1877 requires that the entire cost of constructing a free gravel road shall be collected from the adjacent landowners, and that in no event can the cost of such improvement, or any part thereof, be paid as a debt of the county out of the county treasury.

The case of Walker v. Commissioners (Ind. App.) 38 N. E. 1095, was an action upon a gravel-road bond, alleging simply its execution, and that it was due and unpaid; a copy of the bond being set out as an exhibit. A demurrer to the complaint for want of sufficient facts was sustained. This ruling was affirmed by the appellate court. The court there say:

"This seems to be the first case in which the question arises in a direct action upon the bond, but the general doctrine as to the nonliability of the counties for gravel-road obligations has been frequently asserted and reasserted, until it can no longer be regarded as an open question."

If an uninterrupted course of adjudications by the highest judicial tribunals of a state can be deemed to settle the construction of any statute, the construction of the act of 1877 must be regarded as settled. That construction imperatively requires the court to hold that the bonds and coupons in suit do not create obligations of the county upon which an action can be maintained upon a complaint simply alleging the execution and delivery of them to the plaintiff, and that they are past due, and remain unpaid. The case of Kimball v. Commissioners, 21 Fed. 145, in so far as it is in conflict with the foregoing views, is no longer authoritative, for the reason that the construction placed upon the act of 1877 by the supreme court of this state must prevail. The construction placed upon the act of 1877 by the courts of this state is in conflict with decisions elsewhere (State v. Commissioners, 37 Ohio St. 526); but it is not important to examine those cases, since this court is bound to follow the construction adopted by the highest courts of this state. There will be a finding and judgment for the defendant, with costs.