KIRSCH ET AL. *v.* BRAUN.

[No. 18,374. Filed June 9, 1899. Rehearing denied Oct. 12, 1899.]

153    247
c157   376
153    247
158    210
158    333
158    334

GRAVEL-ROAD BONDS.—*Create no Liability Against County.*—Gravel-road bonds issued under the provisions of the act of 1877 (§§6855–6867 Burns 1894), although in form the bonds of the county, are but evidence of the holder's right to receive from the treasurer the money received from assessments made upon lands benefited by the construction of the road, and create no liability against the county. *pp. 256, 257.*

SAME.—*Not Commercial Paper.*—Gravel-road bonds issued under the provisions of the act of 1877 (§§6855–6867 Burns 1894) are not evidence that valid assessments have been made for their payment,

and a purchaser is bound to take notice of the statute under which they were issued, and of the settled construction of the statute. *p. 257.*

GRAVEL-ROAD BONDS.—*Proceedings.*—*Purchaser of Bonds a Party in Legal Effect.*—Where one purchases gravel-road bonds issued under the act of 1877, prior to the construction of the road, he becomes, in legal effect, a party to all pending proceedings relative thereto, and it is incumbent upon him to see that assessments are made upon the lands benefited which he can cause to be collected. *pp. 257, 258.*

SAME.—*Proceedings.*—*Orders.*—*Judgment.*—*Appeal.*—Under the provisions of §§6855-6867 Burns 1894 for the construction of gravel roads the order of the board of commissioners establishing the improvement is made at a stage of the proceedings when the statute affords no opportunity for the landowners to appear and show why their lands should not be assessed, and there can be no appeal from such order; but the proceedings remain open for the bringing in of additional lands until the final judgment confirming the assessments as a whole is rendered. *pp. 258-263.*

SAME.—*Appeal from Board of Commissioners.*—Sections 7859-7865 Burns 1894 relating to appeals in general from decisions of the board of commissioners confer upon the circuit court jurisdiction of the subject-matter of an appeal from a gravel-road proceeding, although the statute under which the proceedings were had makes no provision for an appeal. *pp. 263, 264.*

SAME.—*Appeal from Board of Commissioners.*—*Notice.*—An appeal taken from the board of commissioners to the circuit court during term constitutes notice of the proceedings in the circuit court as against all parties to the record before the board. *pp. 263-265.*

JUDGMENTS.—*Appeal from Board of Commissioners.*—*Collusion.*—*Gravel Roads.*—A judgment on appeal from the board of commissioners in a gravel-road proceeding is not rendered void as being collusive and *ex parte* by the fact that the court ordered a consolidation of the appeals of several groups of objectors, and their adversaries before the board on the pleadings there filed made no resistance on the trial of the same issues in the circuit court. *pp. 265, 266.*

SAME.—*Appeal from Board of Commissioners.*—*Collusion.*—*Gravel Roads.*—A judgment reversing the action of the board of commissioners in confirming assessments for the construction of a gravel road will not be set aside at the instance of the holder of bonds issued on account of such improvement, on the ground that the appeal was collusive and *ex parte*, where it was neither averred nor found that the petition for the improvement was signed by the owners of a majority of the acres of land affected by the improvement, nor that the viewers did not fraudulently omit lands for the purpose of show-

ing an apparent majority of acres, nor that any finding of the court on appeal from the board was untrue. *pp. 266, 267.*

From the Benton Circuit Court. *Reversed.*

*Daniel Fraser* and *W. H. Isham,* for appellants.

*S. P. Baird* and *Everett & Ewbank,* for appellee.

BAKER, J.—Appellee sued the board of commissioners, the auditor and the treasurer of Benton county, and also appellants, to recover from the county that part of the proceeds of certain gravel-road bonds which the county had appropriated to its own use, to compel the auditor and treasurer to put upon the duplicate and collect the assessments against the lands of appellants and other proprietors and pay appellee's bonds therefrom, and to establish the validity of the assessments by overturning a judgment of the Benton Circuit Court which had annulled them. Appellants are the landowners in whose favor was rendered the judgment that appellee successfully undertook in this case to have set aside. The assignments of error respecting the pleadings and respecting the conclusions of law on the facts specially found present the same questions.

The special finding discloses these facts: At the regular March session, 1889, of the board of commissioners of Benton county, there was presented to the board a petition, praying for the construction of a free gravel road, setting forth particularly its location, and signed by more than five resident landowners whose lands would be assessed for the cost of the improvement. The petitioners filed their bond. The board found that the petition and bond were in compliance with the statute, and appointed viewers and an engineer to meet on April 16, 1889, and proceed to examine the highway proposed to be improved and report at the regular June session, 1889. The auditor notified the viewers and engineer of the time and place of their meeting, and also gave notice by publication in a newspaper printed in the county for three consecutive weeks next prior to the meeting, of the time and

place of meeting, the kind of improvement asked for, and the place of beginning, intermediate points and place of termination. The viewers and engineer met at the time and place appointed and proceeded to make their view.

On the third day of the June session, 1889, the viewers and engineer filed with the board their written report, finding that the improvement would be of public utility, estimating the cost at $20,000, and describing by sections and sectional subdivisions the lands that would be benefited and ought to be assessed.

On that day the board found and entered of record that due notice as required by statute had been given of the time and place of the meeting of the viewers and engineer; that public utility required that the road be constructed; that the report of the viewers and engineer be accepted and approved; that the petition was signed by persons owning a majority of all the acres of land, and by more than a majority of the resident landowners whose lands were reported as benefited; and that the road should be constructed upon the route described in the petition. The order of the board also stated the kind of improvement to be made, the width and extent thereof, and a description of the lands benefited.

Some of the landowners appealed from that order of the board to the Benton Circuit Court. The appeal was dismissed on February 18, 1890. At the regular June session, 1890, the board made and entered of record an order, ratifying and confirming all orders theretofore made in the cause, appointing John P. Doyle, a competent engineer, to superintend the construction of the road, and directing Doyle to give notice that a contract for the construction of the road would be let on July 8, 1890. The contract was let on that day. On July 10, 1890, the board made and entered of record an order, directing that $12,000 of gravel-road bonds be issued to meet the expenses arising from the construction of the road; that the bonds should be made payable to bearer at the banking house of Winslow, Lanier & Co., New York City, and

should recite on their face that they were issued pursuant to an order of the board and pursuant to an act approved March 3, 1877, in relation to free gravel roads and acts amendatory thereof and supplemental thereto, and that they were issued for the purpose of building the H. C. Harris free gravel road in Benton county.

This order of the board further provided that the treasurer of the county should sell the bonds. The bonds were prepared and certified by the auditor and signed by each member of the board under the seal of the county and were delivered to the treasurer in August, 1890, and were in the form prescribed by the board. The treasurer sold the bonds in August to Lamprect Bros., of Cleveland, Ohio, for $12,193 cash, which sum was placed by the treasurer in the general fund to the credit of the H. C. Harris free gravel road.

After the bonds were so sold, they were put upon the market and appellee in August, 1890, bought them for $12,615.20, in the usual course of business, before due, and under the full belief that they were valid and issued pursuant to law and without any defect in the proceedings. Appellee still owns the bonds. No part of the principal or interest has been paid, except the interest for the first year.

About four and three-quarter miles of the road was constructed before July 1, 1891, the greater part of which was completed before January 1, 1891. A large part of the remaining portion was graded prior to July 1, 1891. The orders of the board directing that $12,000 of gravel-road bonds be issued and sold and prescribing the terms, conditions and forms of the bonds were entered of record as a part of the proceedings of the cause, and the landowners were parties to the proceedings and had knowledge of all the facts and never took any steps to enjoin the sale of the bonds, knowing at the time that the bonds would be put upon the market, that they recited upon their face that they were issued pursuant to the statutes of the State, and that they were made payable to bearer. $10,993 of the money arising from the sale of the

bonds was expended in the construction of the road to the advantage and betterment of the lands assessed to pay for the improvement.

On December 6, 1890, the board appointed a committee to apportion the cost of the road on the lands benefited. On January 26, 1891, this committee reported that other lands, in addition to those reported by the viewers as benefited, ought to be assessed, and thereupon the board ordered that all lands within two miles of the improvement be assessed. On March 13, 1891, the report of the committee was submitted to the board and was set aside, and the board then ordered that only such lands as were originally reported as benefited be assessed, and a new committee was appointed to make the apportionment. The new committee failed to qualify.

At a special session held in April, 1891, the board found and entered of record that the viewers in their report, through inadvertence and mistake, omitted from their report certain described lands lying within the territory sought to be assessed, that the property omitted would be benefited, and that these lands should be assessed in addition to the lands reported as benefited by the viewers. The board also at that session appointed three disinterested freeholders a committee to apportion the estimated expense of the improvement upon the lands benefited, and this committee was ordered to meet at the auditor's office on May 4, 1891, and to proceed to make the apportionment. The committee met at the time and place designated and apportioned the cost upon the lands as directed in the order, and filed their written report in the auditor's office in which they apportioned to and set opposite a description of each forty acre tract of land so ordered to be assessed the amount it should be assessed to pay for the construction of the road. The auditor gave notice of the filing of the report and that the board would meet at his office June 15, 1891, to hear the report, by publication in a newspaper of general circulation, printed and published in the county, for

three successive weeks prior to that day. The board met in special session at the time and place named and took the report under advisement and continued the hearing of the cause until the next day and after considering the cause on that day continued the further hearing until June 20th. At this time various exceptions and remonstrances were pending, as hereinafter stated, and the board set aside the assessments and adjudged that the lands of the remonstrators should not be assessed. Thereupon certain petitioners, who had not theretofore objected to or remonstrated against the proceedings, filed their written motion to dismiss the cause on the ground that, as the board had now permitted the original petitioners who had become remonstrants to withdraw, the petition did not contain the names of the owners of a majority of the whole number of acres benefited and returned for assessment. The board then adjourned until June 22nd. On that date, the board overruled the motion, rescinded its order of June 20th, and confirmed all of the assessments. On June 22nd, the board entered of record in these proceedings an order granting an appeal to a group of remonstrants upon their prayer therefor. On June 23rd, while the board was still in session for consideration of this gravel-road proceeding, another group of remonstrants similarly appealed. On July 13th, other remonstrants appealed in vacation. On July 16th, twenty-nine of the petitioners appealed in vacation. Summons was issued in this appeal by the petitioners, but not in the others. In the circuit court the appeals were consolidated by order of court.

Remonstrances and other objections were filed before the board at various stages of the proceedings. On the first day of the June session, 1889, eleven persons who had signed the petition filed in the cause a notice that they should not be counted as petitioners because the route of the improvement had been extended and because the viewers and certain petitioners had fraudulently excluded some 16,000 acres that were liable to assessment to the end that it might appear that

the owners of a majority of acres liable to assessment had petitioned for the improvement. On the third day of the same session twenty-nine landowners filed a general remonstrance against the practicability and public utility of the proposed improvement. On the same day six other landowners filed remonstrances on the ground, among others, that the viewers in collusion with certain petitioners excluded lands owned by persons opposed to the improvement so as to have the petition show that it was signed by persons owning a majority of the acres reported benefited, and that one of the viewers, after the report had been filed, put in additional lands of persons favorable to the petition, with the same end in view. On July 8, 1890, eighteen landowners filed their objections to the letting of a contract for construction. On March 13, 1891, the day set for a hearing on the report of the first apportionment committee, twelve landowners, whose lands were not included in the viewers' report but were in the committee's, remonstrated on the grounds that the petition had not been signed by a majority of the resident landowners whose lands were reported as benefited, nor by the owners of a majority of the acres. On June 15, 1891, the day set for a hearing on the report of the last apportionment committee, one group of five landowners and another group of nineteen filed remonstrances and exceptions on substantially the same grounds as those last above mentioned, and the remonstrances and motions filed at the June session, 1889, were refiled. As before stated, the hearing was continued until June 20th, when the assessments of the remonstrators were set aside; whereupon certain petitioners filed their motion to dismiss the petition; and on June 22nd, the board reversed its rulings and finally confirmed all assessments.

On appeal the cause, after consolidation, was docketed in the names of the petitioners who filed the motion on June 20th, as plaintiffs. All others who had appealed from the decision of the board were named on the docket as defendants. Appellee was not made a party to the proceedings

either before the board or in the circuit court, had no notice of the appeals, and did not know of the judgment in the circuit court until long after it was rendered.

On appeal the parties refiled all pleas, exceptions, motions and remonstrances filed before the board. The court on appeal, upon proper request, found the facts specially and stated conclusions of law thereon. After setting forth the steps taken before the board, the court found that summons had been duly issued and served on all parties assessed who had not appealed for more than ten days before the term; that the viewers had reported 14,492 acres as benefited and liable to assessment; that the parties who had filed their notice of withdrawal from the petition before any steps were taken owned 1,787 acres; that, not counting them as petitioners, the petition at the time the report of the viewers was acted upon by the board contained the names of the owners of only 6,382 acres and against the petition were the owners of 8,110; that the viewers and engineer did not pursue a uniform line, plan or system in making their view of the lands affected by the improvement, but, for the purpose of reducing the assessable limits to such a number of acres as would enable persons favorable to the improvement to make a majority out of their own. lands, intentionally omitted from their report lands owned by remonstrants, although those lands were equally benefited and liable to assessment and much nearer the line of the road than lands of others reported as benefited. As conclusions of law the court stated that the names of the parties who gave notice of withdrawal from the petition could not legally be counted in favor of the improvement; that the petition, when the report of the viewers was acted on by the board, did not contain the names of a majority of resident landowners nor of the owners of a majority of acres reported as benefited; and that the assessments against the lands of each party to the appeals should be set aside and held for naught. On September 15, 1891, the court rendered judgment canceling the assessments of the

Kirsch *v.* Braun.

parties and enjoining the auditor and treasurer from attempting to collect them.    This judgment was in full force at the time the present suit was begun.    The auditor and treasurer were not made parties to the road proceedings on appeal.

In the present suit the court further found that the summons issued on the appeal of the parties who were made plaintiffs on the consolidation was not served on all the landowners whose lands were assessed and who had not joined in any of the appeals; that the summons was not served ten days before the first day of the term; that the landowners who were not served with summons did not appear nor were they called and defaulted; that all parties to the trial and judgment on appeal were seeking the same relief, namely, to have the proceedings before the board declared void; and that the proceedings on appeal were had and determined without adversary parties and were *ex parte* and collusive against appellee.

Conclusions of law were stated to the effect that the judgment on appeal from the board was void as to appellee, that the assessments were valid subsisting liens, and that the proper officers should collect enough therefrom to pay the bonds; and judgment was entered accordingly.

The gravel-road proceedings in question were had under the act of March 3, 1877.    Acts 1877 p. 82, §§5091-5103 R. S. 1881 and Horner 1897, §§6855-6867 Burns 1894.

Appellee claims that the bonds are negotiable securities and that he is protected by the recitals.    A negotiable note or bond must have a maker who promises generally and unconditionally to pay to bearer or to the payee or order a certain sum of money at a certain time.    The bonds authorized by section seven of the act are in form the bonds of the county, but the county promises to pay only out of the assessments against the landowners.    It has been repeatedly held that they create no obligation against the county itself. *Strieb* v. *Cox,* 111 Ind. 299; *Board, etc.,* v. *Fullen,* 111 Ind. 410; *Burton* v. *State,* 111 Ind. 600; *Board, etc.,* v. *Hill,* 115

Ind. 316; *Board, etc., v. Fullen*, 118 Ind. 158; *Quill v. City of Indianapolis*, 124 Ind. 292, 7 L. R. A. 691; *Spidell v. Johnson*, 128 Ind. 235; *Little v. Board, etc.*, 7 Ind. App. 118; *Walker v. Board, etc.*, 11 Ind. App. 285; *Braun v. Board, etc.*, 66 Fed. 476 and 70 Fed. 369, 17 C. C. A. 166. The landowners whose lands are assessed do not promise to pay the bonds. The assessments are merely liens upon the lands and they do not create any personal liability. The bonds are evidence of the holder's right to receive from the treasurer the money he collects from the assessments; but they are not evidence that valid assessments or any assessments have been made, for the evidence of a judgment is the record. Manifestly these bonds lack certain essentials of commercial paper, and appellee was bound to take notice of the statute under which the bonds were issued and of the settled construction thereof. *Claiborne County v. Brooks*, 111 U. S. 400, 4 Sup. Ct. 489; *East Oakland v. Skinner*, 94 U. S. 255; *McClure v. Township of Oxford*, 94 U. S. 429; *Wells v. Supervisors*, 102 U. S. 625; *Kelley v. Milan*, 127 U. S. 139, 8 Sup. Ct. 1101; *Young v. Clarendon Tp.*, 132 U. S. 340, 10 Sup. Ct. 107; *Hill v. Memphis*, 134 U. S. 198, 10 Sup. Ct. 562; *Marshall County Sup. v. Cook*, 38 Ill. 44; *Bissell v. City of Kankakee*, 64 Ill. 249.

It is urged, also, that appellee, not being a party to the record of the road proceedings, had the right to rely upon the orders of the board in establishing the road and directing the issue of bonds, and could not be affected by any subsequent steps. From the fact that the statute provides for bonds on which there is no personal liability and for the payment of which the assessments against the lands can alone be looked to, it follows that it was incumbent upon appellee to see to it that there were or would be assessments which he could cause to be collected. By purchasing the bonds he made himself in legal effect a party to the pending proceedings. The order establishing the improvement was

made on June 5, 1889.    After an appeal by certain land-owners, which was ineffectual because premature, the order was entered anew by the board on June 10, 1890, and on July 10, 1890, bonds were directed to be issued, which were sold in August.    The first apportionment committee was not appointed till four months later, and it was more than ten months before any judgment for assessments was rendered by the board.    It will be seen from the findings that appellee paid his money and permitted it to be expended under or-ders of the board long before any provision was made for payment.    Purchasing the bonds at this stage of the case, he was bound at his peril to follow the proceedings into the judgment the equitable title to which is the only thing his bonds were evidence of.    If the action of the board in order-ing this improvement was the final judicial determination of the cause, which could not be legally set aside on appeal, then any subsequent steps would necessarily be merely ministerial in character; then appellee would have the right to rely upon the proper officers' taking the ministerial steps to record the assessments which would inevitably flow from that judicial determination; then appellee, the officers having failed or refused to perform their ministerial duties, would be entitled to a mandate against them; then the landowners, like all other persons who are affected by proceedings against which they have no remedy by appeal, would not be permitted to stand by and see the bonds issued and the money expended and afterwards to complain of mere irregularities,—they would be compelled to act promptly in seeking to enjoin the issuance of bonds and the expenditure of money.    *Bass* v. *City of Ft. Wayne,* 121 Ind. 389; *McEneney* v. *Town of Sullivan,* 125 Ind. 407; *Board, etc.,* v. *Justice,* 133 Ind. 89. But if the action of the board in ordering this improvement was not the final judicial determination of the cause, then ap-pellee was bound to take notice of all steps, *coram judice,* subsequently pursued in reaching the final adjudication. And if the landowners had a subsequent right of appeal, and

if the court on appeal had the power to relieve their lands of the assessments, then they would not be compelled, if indeed they would be permitted, to go outside of the pending cause and prosecute a collateral suit for injunction. *White* v. *Fleming,* 114 Ind. 560, 575; *Bowen* v. *Hester,* 143 Ind. 511, 520.

Was the action of the board in ordering this improvement the final judicial determination of the cause?

No appeal lies from this order. *Neptune* v. *Taylor,* 108 Ind. 459; *Tomlinson* v. *Peters,* 120 Ind. 237. The right is denied, not on the ground that appeals may not be taken from decisions of the board, for they may be; §5772 R. S. 1881 and Horner 1897, §7859 Burns 1894; *Tomlinson* v. *Peters, supra;* but because an appeal at that time is premature. In determining the right of appeals from the action of the board under this gravel-road act of 1877, it was said in *Tomlinson* v. *Peters, supra:* "The statute evidently does not contemplate more than one appeal in any case, and that must be from the final decision and judgment in the case. The proceedings remain under the jurisdiction of the board of commissioners, and they have power to change or annul any order made by them until a decision is made substantially ending and terminating the proceedings before the board. * * * The commissioners order the construction of the road, but the road can not be constructed without the further final action and decision of the board confirming the report of the three freeholders appointed to estimate [apportion] the expense of the improvement upon the real property, which shall, when so approved and spread upon the record, be a lien on the real property; and until such order and decision is made by the board, the proceedings remain under the jurisdiction of said board of commissioners, and an appeal only lies from such final order."

The proceedings remain open for the bringing in of additional lands until the final judgment confirming the assess-

ments as a whole is rendered. *Kline* v. *Board*, 152 Ind. 321; *Bowen* v. *Hester*, 143 Ind. 511.

The order establishing the improvement is made at a stage of the proceedings when the statute affords the landowners no opportunity to appear and show why their lands should not be assessed. The first section gives the board power, as in the act provided, to proceed with the improvement. The second section provides that the board, upon the presentation of a petition, signed by five or more interested landowners, and upon the filing of a bond, shall appoint viewers and an engineer, and that notice by publication shall be given of the time and place of the meeting of the viewers. The third section clearly indicates the purpose and scope of that notice. If any person's lands will be appropriated by the construction of the improvement, he must present his claim to the viewers while they are making the survey or within ten days thereafter, or be forever barred. If he is not satisfied with the award of the viewers, he may have his damages assessed by a jury of five, whose decision is final. The fourth section directs the viewers, at the next regular session of the board (but not on a day certain), to make a report to the board showing public necessity, damages claimed in consequence of the appropriation of property, the estimated cost of the improvement "and the lands which will be benefited thereby and ought to be assessed for the expenses of the same: provided, that no lands shall be so assessed which do not lie within two miles of the contemplated improvement". The fifth section, among other things, provides: "Upon the return of the report mentioned in the last section, the commissioners shall, if in their opinion public utility require it, enter upon the record an order that the improvement be made; which order shall state the kind of improvement to be made, the width and extent of the same, and the lands which shall be assessed for the expense of the same; but such order shall not be made until a majority of the resident landholders of the county whose lands are reported as

benefited and ought to be assessed, and also the owners of a majority of the whole number of acres of all lands that are reported as benefited and ought to be assessed, shall have subscribed the petition mentioned in the second section of this act."

No hearing, no notice of hearing on the viewers' report, is provided for. .The opportunity to be heard by the viewers out in the country on the question of damages accruing to him by reason of the appropriation of his property, does not give the landowner his day in court on the questions of the liability of his land to assessment, the amount of his benefits, the amount of his assessment, the fraudulent character of the petition, the fraudulent action of the viewers, or any question that might have to be determined by the board as a court. If the notice prescribed in the second section was the only notice provided for in the act, the assessments that finally result from the judgment of the board in confirming the report of the apportionment committee would be void as being in contravention of that part of the fourteenth amendment to the Federal Constitution which forbids the taking of any person's property without due process of law. *Kuntz* v. *Sumption*, 117 Ind. 1, 2 L. R. A. 655; *Tucker* v. *Sellers*, 130 Ind. 514, 519; *McEneney* v. *Town of Sullivan*, 125 Ind. 407, 409, and cases there cited.

The viewers are not required to report upon the amount of the benefits in the aggregate, nor upon the amount of benefits to the separate tracts, nor upon the amount that ought to be assessed against any particular tract, which of course could not exceed the ascertained benefits to that tract. *Campbell* v. *Board, etc.*, 118 Ind. 119, 121. The extent of the benefits is considered for the first time by the apportionment committee appointed under the sixth section, and, as additional lands may be assessed that were not mentioned in the viewers' report, the aggregate of benefits can not be known until the work of the apportionment committee is concluded. If the report of the apportionment committee should show that the

aggregate of benefits was less than the assessments necessary to pay for the construction of the improvement, and if on such showing the board was then powerless, and the circuit court on appeal was powerless, to abate the proceedings, the act of 1877 would conflict with article 1, section 21, of our Constitution, which provides that "No man's property shall be taken by law without just compensation."

The sixth section provides that the board, upon ordering the improvement, shall *immediately* appoint the apportionment committee. Upon the return of their report, a hearing and a proper notice of the hearing is provided, at which interested parties, without any limitation upon their right to do so, may file their exceptions in writing, without any limitation as to the grounds thereof; and the board "shall first proceed to hear such exceptions, and for that purpose shall hear any testimony that shall be offered by any party interested". That this notice is the first notice that brings any landowner who is not a petitioner into court, and that this hearing is the only "day in court" provided, is well affirmed in *Bowen* v. *Hester*, 143 Ind. 511, 520: "The notice of the time and place of meeting of the viewers is for the purpose of enabling persons who are damaged to apply to the viewers therefor. That only applies to a small part of the four-mile strip of land liable to assessment, that part injuriously affected by the establishment of the road. The appellee makes no complaint that he was damaged by the road being constructed on or through his land, but his sole complaint is against its assessment. Therefore he, and all those similarly situated, were not concerned with the report of the viewers and engineer whether it did or did not include his land as benefited, because there is no provision for any hearing of such report and no provision is made for objecting thereto on account of its including lands as benefited. No notice is required of the filing of such report. But when the report of the apportioning committee is filed with the auditor, notice thereof is required to be given, and a notice when and where the

commissioners will hear the same. Then exceptions and objections may be filed thereto and tried before the commissioners. Then and not till then is any landholder authorized to appear and object to the proceedings; and if the notices above mentioned have been given, then jurisdiction has been acquired over every person affected by or interested in the proceedings."

The seventh section provides for the issuance of bonds, maturing at annual intervals after two years and not beyond eight years. It also directs that "said assessments shall be divided in such manner as to meet the payment of principal and interest of said bonds, and so be placed upon the duplicate for taxation against the lands assessed". If, when the objecting landowners have their day in court under the sixth section, litigation should be begun which was not terminated within two years, it would be impossible to comply with the provisions of the seventh section in case bonds were issued before the assessments were adjudged. Appellee, buying bonds that were prematurely issued, took them subject to the final determination of the cause.

Were the proceedings of the circuit court on appeal *coram non judice?*

The appeals were taken under §§5772-5778 R. S. 1881 and Horner 1897, §§7859-7865 Burns 1894. The act of 1877 contains no provisions relating to appeals, and makes no conditions or limitations upon the right to appeal. That right is conferred by §§5772 *et seq., supra,* relating to appeals in general from decisions of the board. *Tomlinson* v. *Peters,* 120 Ind. 237. The circuit court therefore had jurisdiction of the subject-matter of the appeals. It found that all persons whose lands were assessed and who did not appeal had been duly served with summons. If that finding were open to contradiction in this suit, the result would be unaffected, for two of the appeals were taken in term. The statute, §5775 R. S. 1881 and Horner 1897, §7862 Burns 1894, directs that summons issue only in case the appeal is taken in

vacation. The prayer for appeal and the record of the grant-
ing thereof, entered upon the board's record of proceedings
in this gravel-road case, constituted notice of the proceedings
in the circuit court as against all persons who were parties
to the record before the board and all persons whose rights
depended upon the adjudication that was appealed from.
'All of the objections, remonstrances, pleas and exceptions,
filed at any stage of the proceedings before the board, were
transmitted to the circuit court and refiled. The circuit
court had jurisdiction of the parties and of the subject-matter,
and necessarily had the power to determine the issues set
forth in the various pleadings. Its action was not *coram
non judice*, however erroneous it may have been.

The numerous cases cited by appellee that uphold the pro-
ceedings of boards against collateral attacks have no applica-
tion here. The case of *Miller* v. *Burks*, 146 Ind. 219, hold-
ing that on appeal the circuit court can not inquire into the
question as to whether or not the petition was signed by a
majority of the resident landowners unless the question was
presented to the board before the report of the viewers was
acted upon, relates to gravel-road proceedings under the act
of 1885. Acts 1885, p. 162, §§6879-6899 Burns 1894,
§§5114k-5114dd Horner 1897. Under the act of 1885,
there are no preliminary viewers, followed by an apportion-
ment committee. The work of the viewers and of the com-
mittee under the act of 1877 is performed by the viewers
alone under the act of 1885, except certain ministerial acts
of the superintendent. The notice and the hearing apply to
the viewers' report, and the landowners then have their day
in court. The right of appeal, by section fourteen, is ex-
pressly limited to those who filed remonstrances before the
board, and the hearing on appeal is expressly confined to
those matters presented to the board in the remonstrances.
Manifestly, no one should be permitted to come in, after his
day in court has passed and judgment has been rendered, and
be permitted, as a matter of right, to plead to the complaint.

Manifestly, also, the decisions upon gravel-road proceedings under the act of 1885 are inapplicable to this case. *Wilkinson* v. *Lemasters,* 122 Ind. 82, was also a proceeding under the gravel-road law of 1885. Appellee cites many other cases relating to other kinds of statutory proceedings before the boards, of which *Gilson* v. *Board, etc.,* 128 Ind. 65, 11 L. R. A. 833, may be taken as illustrative, a proceeding for the purchase of a toll-road, which are of slight applicability. In each proceeding the question as to "the day in court" must be determined with reference to the notice, if any, therein prescribed. The case of *Evans* v. *West,* 138 Ind. 621, although a proceeding under the act of 1877, bases the decision regarding notice and what may be tried on appeal upon precedents that arose under the gravel-road law of 1885. No distinction between the two acts seems to have been noticed, and for that reason the case is disapproved.

Are the findings sufficient to warrant the conclusion of law that the judgment on appeal from the board is void for collusion? The findings are that all parties to that judgment were seeking the same relief, to wit, to have the road proceedings before the board declared void, and that the proceedings on appeal were had without adversary parties and were *ex parte* and collusive as against appellee. These findings must be taken in connection with those which show fully and in detail what was done by the parties. Three separate groups of remonstrators appealed. They presented in the circuit court the same objections that they were pressing before the board. Their rights on appeal could not be affected by the fact that the court ordered a consolidation of the appeals. The presumption must be indulged that, the consolidation having been made for convenience of trial, the rights of the various parties were as fully heard and determined by the court as if there was but one appeal by one group of remonstrants. Nor could the rights of any remonstrant be diminished on appeal because his adversaries before the board on the pleadings there filed made no resistance on the trial of

the same issues in the circuit court. The appeal of certain petitioners did not change the power or duty of the court. They presented to the court the same plea that they filed before the board. On appeal it pertained to the same conditions of the case that it did before the board. On June 20, 1891, the board sustained certain remonstrances, whereupon the petitioners in question filed their plea in abatement, or motion to dismiss the proceedings, on the ground that the petition, after the board had held that certain petitioners might withdraw, did not contain the names of the owners of a majority of the acres reported by the viewers. On appeal, the court had the power to hear their plea. Their plea showed that they were not seeking to abate the proceedings except in case the remonstrances that were once sustained by the board should be sustained by the court on appeal. The findings fall far short of showing a condition wherein "There is no judge; but a person invested with the ensigns of a judicial office is misemployed in listening to a fictitious cause proposed to him; there is no party litigating, there is no party defendant, no real interest brought into question." Black on Judgments, §508.

But there are graver reasons why the findings are insufficient to warrant the conclusion that the judgment on appeal from the board should be set aside for fraud. There is no finding that the alleged fraudulent conduct of appellants entered into the judgment on the merits. "The jurisdiction of courts of equity to set aside a decree obtained by fraud, in an original bill filed for that purpose, has long been unquestioned. * * * To entitle a party to relief from a judgment or decree, it must be made evident that he had a defense upon the merits, and that such defense has been lost to him without such loss being attributable to his own omission, neglect or default." Freeman on Judgments, §486; 12 Am. & Eng. Ency. of Law, 143; *Wilhite* v. *Wilhite,* 124 Ind. 226. It is neither averred nor found that the petition actually was signed by a majority of the resident landowners or by the

owners of a majority of acres at the time the viewers' report was acted upon by the board or at any time; nor that the viewers did not fraudulently omit lands .for the purpose of showing an apparent majority of acres; nor that any finding of the court on appeal from the board was untrue. Furthermore, appellee, as has been seen, became a party to the gravel-road proceedings by purchasing the bonds. He was bound to look to the judgment confirming the assessments, which were the only source of payment. The appeals in term were notice to him that the jurisdiction of the circuit court would be invoked. It is neither averred nor found that any concealment, deception, collusion, or other fraudulent conduct on the part of appellants or the court prevented him from contesting the facts and the law. as they were found and concluded to be. On the contrary, it was appellee's own omission and neglect that caused him to be absent from court on the day when it was his duty to attend, or accept the result.

Judgment reversed, with directions to restate the conclusions of law in accordance with this decision and to enter judgment thereon in favor of appellants.